# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CARMENCITA SIMPSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 06 C 665 |
| JUNIPER BANK, | ) ) Judge Rebecca R. Pallmeyer |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Carmencita Simpson ("Plaintiff") received a credit solicitation mailing from Juniper Bank ("Defendant") some time after March 17, 2005, informing her that, based on her credit record, she was "pre-qualified" for a Platinum MasterCard ("Juniper mailer"). (Compl. ¶¶ 6, Ex. A.) On behalf of herself and a class of individuals who received the same mailing, Plaintiff now claims that Defendant accessed her consumer report without her consent and in willful violation of the Fair Credit Reporting Act ("FRCA"), 15 U.S.C. § 1681 *et seq.* Specifically, Plaintiff claims that Defendant's mailing did not constitute a "firm offer of credit" within the meaning of 15 U.S.C. § 1681b(c)(1)(B)(i), and that Defendant's access to her credit report thus violates the FCRA. Defendant has moved to dismiss Plaintiff's complaint. For the reasons set forth below, Defendant's motion to dismiss is denied.

## FACTUAL BACKGROUND

On a motion to dismiss, the court accepts all well-pleaded allegations as true. *Shawnee Trail Conservancy v. U.S. Dep't of Agric.*, 222 F.3d 383, 385 (7th Cir. 2000). The court will consider the Juniper mailer, attached as an exhibit to Plaintiff's complaint, as part of the pleadings. *Wright v. Assoc. Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.")

### 1. Dissemination of the Juniper Mailer

Plaintiff alleges that Juniper Bank "approved and authorized" the dissemination of the Juniper mailer received by Plaintiff and over 200 other Illinois residents. (Compl. ¶¶ 14, 17.) Juniper Bank "engaged in or arranged for the 'prescreening' of consumers" to select the consumers that were to receive the Juniper mailer; these consumers were selected based on information in their consumer reports. (*Id.* ¶¶ 9-10.)[1] The mailer advised Plaintiff that she was "selected for this offer because, based on [her] credit record maintained by credit bureaus, [she] met the criteria established for the offer." (*Id.* ¶¶ 7, Ex. A.) Plaintiff, however, never authorized Juniper Bank to access her consumer report, and Juniper Bank had no reason to believe that Plaintiff had given Juniper or its agents permission to access her consumer report or to use information contained in her consumer report. (*Id.* ¶¶ 18-19.) Although Plaintiff did not initiate any transaction with Juniper Bank after receiving the mailer, Plaintiff alleges that Juniper Bank obtained business from others as a result of the mailer. (*Id.* ¶¶ 16, 20.)

### 2. Content of the Juniper Mailer

The Juniper mailer states that Plaintiff is "pre-qualified" for the Platinum Mastercard. (*Id.* ¶ Ex. A.) According to the mailer, the credit card offers "a generous credit line and valuable perks like Purchase Assurance, Travel Accident Insurance, and MasterRental Insurance" as well as "extra benefits like 100% fraud protection, regular credit line increase reviews and great super-saver discounts." (*Id.*) It further states that Plaintiff should "accept [her] card today—in just 30 seconds" and asks Plaintiff, "why wait to apply? You're pre-qualified." (*Id.*) Attached to the Juniper mailer is a "30-Second Pre-Qualified Reply Form" that requests additional information from Plaintiff,

---

[1] Prescreening is usually performed by data or information brokers who access consumer report information held by credit agencies. (Compl. ¶ 11.) According to Plaintiff, because prescreening causes data brokers to handle credit information, Juniper Bank subjects consumers to an "increased risk of improper disclosure and identity theft" by engaging in prescreening and by failing to properly disclose to consumers their right to "opt out" of prescreening. (*Id.*)

including her social security number, her gross annual household income, and whether she has a checking account. (*Id.*)

Also attached to the Juniper mailer is a statement of terms and conditions. The terms and conditions include: a variable Annual Percentage Rate ("APR") of 11.99%, 15.99%, or 18.99%, depending on a review of the applicant's reply form and credit history;[2] a variable APR for Balance Transfers and Convenience Checks of 11.99%, 15.99%, or 18.99%, again depending on a review of the applicant's reply form and credit history; no annual fee; and a minimum finance charge of $1.[3] (*Id.*) The terms and conditions also detail the rates for cash advances, the grace period applicable to purchases, the method of computing the balance for purchases, and the applicable transaction charges. (*Id.*) The default rate, which is listed as "up to 30.24% variable," remained to be determined on the basis of further information from the Plaintiff's account history and performance on other credit accounts. (*Id.*) Juniper Bank expressly reserved the right to change the APR described in the terms and conditions, and also reserved the right "to change at any time the benefits and features associated with the card or account." (*Id.*) The terms and conditions included in the Juniper mailer did not specify a minimum line of credit. (*Id.*)

## **DISCUSSION**

Federal Rule of Civil Procedure 8(a) requires, in relevant part, that a complaint provide a "short and plain statement of the claim" to give the defendant "fair notice" of the plaintiff's claim and the grounds upon which it rests. FED. R. CIV. P. 8(a); *Cler v. Illinois Educ. Ass'n*, 423 F.3d 726, 725 (7th Cir. 2005) (citations and internal quotations omitted). On a motion to dismiss, the court accepts

---

[2] The terms and conditions clarify that the specified APR may vary; the rate is determined monthly by adding one of these different percentages—6.49%, 10.49%, or 13.49%—to the Prime Rate (that is, the interest rate that banks charge their most credit-worthy customers). (Compl. ¶ Ex. A.) *See* http://financial-dictionary.thefreedictionary.com/prime+rate. Under the terms and conditions, the APR will not be lower than 11.99%, 15.99% or 18.99%. (*Id.* ¶ Ex. A.)

[3] The parties do not specify how often this minimum finance charge is imposed.

3

the complaint's well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir 2004). Dismissal is proper only if no set of facts, even hypothesized, would entitle the plaintiff to relief. *Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006); *Cole*, 389 F.3d at 724. Thus, a complaint will survive a 12(b)(6) motion to dismiss as long as it "narrates an intelligible grievance that, if proved, shows a legal entitlement to relief." *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003) (citations omitted).

Under the FCRA as it relates to this case, Juniper Bank was authorized to access Plaintiff's credit report only in connection with a "firm offer of credit." Defendant contends that Plaintiff's complaint fails to state a claim upon which relief can be granted because Juniper Bank's offer constituted a "firm offer of credit" under the FCRA. (Def. Mem. at 7-13.) Defendant further argues that Plaintiff has not sufficiently pleaded a willful violation of the FCRA. (*Id.* at 14.) Plaintiff responds that she has adequately alleged that Defendant did not make a "firm offer of credit" because the Juniper mailer included multiple sets of credit terms and, in Plaintiff's view, did not guarantee anything to Plaintiff. (Pl. Opp'n at 5-10.) Plaintiff also argues that her allegations are sufficient to establish willfulness. (*Id.* at 10-11.)

### 1. The Fair Credit Reporting Act

In order to protect consumers' privacy and maintain integrity with respect to information held by consumer reporting agencies, the FCRA prohibits credit agencies from sharing a consumer's credit report without the consumer's consent, unless the report is shared for one of the "permissible purposes" set forth in 15 U.S.C. § 1681b(a). *See Cole*, 389 F.3d at 729. Among the "permissible purposes" for which a credit provider can obtain a consumer's credit information from a credit bureau is when the provider is making a "firm offer of credit" to the consumer. 15 U.S.C. § 1861b(c)(1)(B)(i). A "firm offer of credit" is defined as an offer "that will be honored if the consumer is determined, based on the information in his or her consumer report, to meet the specific criteria

4

used to select the consumer for the offer." *Id.* § 1681a(l). The offer may be conditioned on three specific requirements: 1) the creditor may apply pre-selected criteria relating to the consumer's creditworthiness; 2) the offer may be conditioned on verification that the consumer still meets the criteria used to initially select the consumer for the offer; and 3) the offer may be conditioned on the consumer furnishing collateral that is established before the consumer was selected for the offer and disclosed to the consumer in the offer. *Id.* § 1681a(l)(1)-(3). The parties do not disagree that, to the extent the Juniper offer is conditioned on any of these three requirements, it may still constitute a "firm offer of credit."

### 2. "Firm Offer of Credit"

Defendant contends that Plaintiff has failed to state a claim that Defendant violated the FCRA because the Juniper mailer was a "firm offer of credit" to Plaintiff. (Def. Mem. at 7-13.) Plaintiff disagrees that the Juniper mailer constitutes a "firm offer of credit" and argues that she has sufficiently alleged otherwise. (Pl. Opp'n at 5-10.)

Defendant first argues that Plaintiff's complaint must be dismissed because she has not alleged that the Juniper mailer failed to meet any particular aspect of the statutory definition of a firm offer. (Def. Mem. at 7; Def. Reply at 2.) The court does not find that this gap in Plaintiff's complaint requires dismissal. The FCRA defines a "firm offer of credit" as one "that will be honored if the consumer is determined, based on the information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." 15 U.S.C. § 1681a(l). In *Cole*, where the plaintiff contended that a promotional credit flyer she received was not a "firm offer of credit," the Seventh Circuit criticized the district court's focus on "whether the offer would have been honored" as "inappropriately narrow"; the court concluded that the fact that an offer of credit would have been honored is not dispositive to a claim that the offer was not firm. 389 F.3d at 727-28. The court stated: "Defining a firm offer of credit as merely any offer that will be honored elevates form over substances, [and] . . . 'deprive[s] the statutory provision in question of all serious

5

purpose.'" *Id.* at 727 (quoting *Gregory v. Helvering*, 293 U.S. 465, 470 (1935)). The substantive requirements for "firm offers of credit" are therefore clarified in cases, such as *Cole*, that interpret the FCRA. Thus, as long as Plaintiff has sufficiently alleged that Juniper Bank's offer failed to meet the requirements of a "firm offer of credit" as interpreted in relevant cases, the court does not find error in Plaintiff's failure to track the statutory language in her complaint.

Before turning to whether the Juniper mailer was not a "firm offer of credit," the court pauses to examine the leading Seventh Circuit authorities on what constitutes a "firm offer of credit" under the FCRA—*Cole v. U.S. Capital* and *Perry v. First National Bank*. Both cases guide the outcome in this case and have been discussed at length by the parties.[4]

### A.     *Cole v. U.S. Capital*

In *Cole*, the plaintiff alleged that her credit report had been improperly accessed in connection with a promotional credit flyer she received from U.S. Capital, Inc. and Gleason Chevrolet. 389 F.3d at 723. The flyer stated that plaintiff was "pre-approved to participate in an exclusive offer" to "receive a Visa or MasterCard with a limit up to $2,000 as well as up to $19,500" in automotive credit. *Id.* at 722. In fine print, the flyer described a variety of requirements that the plaintiff would have to meet for approval and clarified that the offer guaranteed "a credit line of at least [$300] for the purchase of a vehicle." *Id.* at 722-23. The flyer also explained that "[g]uaranteed approval" was not express or implied, and that the interest rate would vary from 2.9% to 24.9%, depending on the consumer's credit-worthiness and lenders' credit parameters. *Id.* at

---

[4] On more than one occasion, the parties have submitted to the court supplemental authority in support of their positions with respect to this motion to dismiss. *Perry v. First National Bank*, decided by the Seventh Circuit after the filing of this lawsuit, is among the authorities that the parties discuss in supplemental briefing. (*See* 10/12/06 Motion of Juniper Bank to Provide Supplemental Authority; 11/2/06 Plaintiff's Sur-Response to Defendant's Supplemental Authority.) Much of the other authority submitted as supplemental authority and cited in the parties' initial briefs consists of unreported district court cases; while the court has considered all of the cases cited and supplemental briefing the parties have submitted, it will not discuss pre-*Perry* cases to the extent *Perry* provides the court with the necessary guidance.

723. The plaintiff in *Cole* contended that the offer was merely a sham to obtain her credit report; she argued that the offer "was not made with the expectation that a significant number of consumers would accept" it given the insignificant amount of credit available. *Id.* at 726. The defendants argued that the FCRA does not require any minimum amount of credit to be offered, hypothesizing that pre-approval could be for as low as $1 and still constitute a "firm offer of credit"; the Seventh Circuit disagreed and stated that a firm offer "must have sufficient value for the consumer to justify the absence of the statutory protection of his privacy." *Id.*

In the Seventh Circuit's view, an offer without value to the consumer is merely an advertisement or solicitation. *Id.* at 727. That the defendants would have honored this particular offer was not enough to qualify it as a firm offer. *Id.* Determining whether an offer is firm, the *Cole* court stated, requires consideration of "the *entire* offer and the effect of *all* the material conditions that comprise the credit product in question." *Id.* at 727-28 (emphasis in original.) Under *Cole*, the amount of credit offered, and the terms of the offer, including the rate of interest, method of computing interest, and length of repayment period, are all important considerations to determine the offer's appreciable value. *Id.* at 728. If, in context, the offer is only a guise for solicitation, the offer cannot be considered firm. *Id.* The *Cole* court concluded that the offer at issue was a sham to access consumers' credit reports: it was not clear that the offer would be honored even if the consumer met the conditions set forth in the offer; the small amount of credit offered, combined with the fact that it must be used to purchase a vehicle, cast doubt on whether the offer was of any genuine value to the consumer; and the offer was missing several terms, including the precise rate of interest for a particular consumer, the method of calculating interest, and the repayment period. *Id.* at 728. The absence of those terms made it impossible for the court to determine the value the offer had, if any. *Id.*

    **B.**    *Perry v. First National Bank*

The Seventh Circuit's decision in *Perry v. First National Bank*, 459 F.3d 816 (7th Cir. 2006), issued after the filing of this lawsuit, further clarified what constitutes a "firm offer of credit" under the FCRA. The plaintiff in *Perry* argued that a credit solicitation mailing she received from First National Bank was not a "firm offer of credit" but a sham, and that First National Bank violated 15 U.S.C. § 1681b(c)(1)(B)(i) by accessing her credit report in connection with the offer. *Id.* at 818. The mailing was not a firm offer, the plaintiff argued, because it was "virtually worthless," offering a small amount of credit and requiring payment of "comparatively large fees." *Id.* at 819, 824. The credit solicitation mailing offered a minimum credit line of $250, but the cardholder's first bill would contain a balance of $175 due to associated fees and would be subject to an 18.9% APR; in the first month, the effective amount of credit was therefore only $75. *Id.* at 824.

In finding that First National's offer was a "firm offer of credit," the court noted that the plaintiff did not allege that "the credit card's interest rate was unclear, that approval was not guaranteed, or that there were any usage limitations on the credit line." *Id.* at 823-24. The *Perry* court distinguished *Cole* on the basis that, in *Perry*, First National's solicitation was clear on its face that recipients were pre-approved for the credit offer and the interest rate of 18.9% was stated in the offer. *Id.* at 825. The *Perry* court further noted that, despite the low credit limit, the card could be used to purchase any products or services for which a Visa card is accepted. *Id.* The court did not find the card to be without value on account of the significant fees and minimal credit line; a credit holder paying off the card each month could make almost $3,000 in purchases a year and would incur the benefit of building up a credit rating. *Id.* Further, because the only product offered was a credit line, the offer was not a "guise for solicitation or a "sham" to pitch a product rather than to extend credit. *Id.* (citations omitted).

**C.      Juniper Bank's Offer Of Credit**

Plaintiff here alleges that the Juniper mailer "does not qualify as a 'firm offer of credit' within the meaning of the FCRA, justifying Juniper in obtaining a credit report on a consumer, in that it

8

offers multiple sets of credit terms, none of which promise a minimum standard of credit." (Compl. ¶ 27.) Defendant contends this allegation is insufficient to state a claim for a violation of the FCRA. (Def. Mem. at 8.)  Because the Juniper mailer is attached to the complaint and is part of the pleadings, the court considers the Juniper mailer and this allegation in determining the sufficiency of Plaintiff's complaint.  If, drawing all reasonable inferences in Plaintiff's favor, a set of facts exists to support that the Juniper mailer was not a "firm offer of credit," dismissal is not proper.  See Massey, 464 F.3d at 645; Cole, 389 F.3d at 724.  The court is satisfied that Plaintiff has stated a claim for a violation of the FCRA.

Under Cole, the court must examine "the *entire* offer and the effect of *all* the material conditions" to determine whether an offer constitutes a "firm offer of credit."  389 F.3d at 727-28. Plaintiff and Defendant disagree on the applicability of Cole to this case.  Defendant contends that reliance on Cole is misplaced because Cole considered an offer of credit made in conjunction with an offer for a non-credit product, an automobile.  (Def. Mem. at 10.)  Because the court here need not be concerned with separating a *bona fide* credit offer from other advertisements for products and services, Defendant argues, "there is no statutory basis for inquiring into the value of the credit offer."  (Id. at 6.)  In support, Defendant cites Murray v. GMAC Mortgage Corporation, where the plaintiff contended that GMAC Mortgage improperly accessed her credit report in connection with a loan offer to be secured by a mortgage on her home.  434 F.3d 948, 950-51 (7th Cir. 2006).  The GMAC Mortgage court reviewed the Cole decision and observed that Cole examined the value of the credit offer to determine whether the offer was "a sham offer to pitch a product rather than extend credit."  Id. at 955.  That determination did not, in the GMAC Mortgage court's estimation, "require a consumer-by-consumer evaluation," so the trial court had erred in denying class certification.  Id.  Defendant here contends that Cole, as summarized in GMAC Mortgage, does not support Plaintiff's claim because Juniper Bank's offer did not involve solicitation for a product or service.  (Def. Reply at 6-7.)  This court disagrees; the court need look no further than Perry to

conclude that *Cole*'s analysis continues to be relevant to the issue of whether a bank, offering only credit, has made a firm offer.

The offer of credit in *Perry* was not coupled with any offer for products or services; while the *Perry* court recognized this distinction from *Cole*, the Seventh Circuit nevertheless considered the principles set forth in *Cole* in determining whether the defendant, First National Bank, had made a "firm offer of credit." 459 F.3d at 824. The court considered the fact that First National Bank was making a credit-only offer as one factor in its assessment of the value of the offer, but balanced this factor with others. *Id.* at 825. Thus, even where a credit offer is not coupled with an offer for products or services, a court must consider (1) whether credit approval is guaranteed; (2) whether the precise rate of credit and other material terms are included in the solicitation; and (3) whether the amount of credit offered is minimal. *Id.* at 824-25 (applying factors set forth in *Cole*). Overall, the inquiry is focused on whether the offer has value to the consumer. *See id.* at 826. In *Perry*, the Seventh Circuit "[took] these factors together" and concluded that First National Bank had made a "firm offer of credit"; the court follows the approach of the *Perry* court here. *Id.* at 825.

### 1. Whether Offer Would Be Honored

The court first turns to whether Juniper Bank's offer guarantees credit approval. *See id.* at 824-25. Defendant alleges that Juniper's offer is firm, in part, because "Juniper did not dishonor the offer . . . nor does Simpson allege that Juniper intended to dishonor the offer." (Def. Mem. at 8.)[5] Plaintiff claims that "[t]here is no guarantee that Plaintiff has been approved for anything," (Pl. Opp'n at 2); Plaintiff distinguishes Juniper Bank's offer from the offer in *Perry* because, in her view,

---

[5] Defendant also notes that Juniper extends billions of dollars annually in credit lines to individuals responding to solicitations. (Def. Mem. at 8, n.5.) The court will not consider this evidence, which is outside the pleadings, for the purpose of this motion to dismiss. *See Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005). In any case, even if many individuals do obtain credit cards from Juniper Bank each year as a result of credit solicitation mailings, this does not establish that an individual who receives a credit solicitation mailing, such as the Juniper mailer, is *guaranteed* to receive credit approval, which is the relevant inquiry under *Perry*.

10

the credit line of $250 "was *actually* being offered" to the consumers in *Perry*. (11/2/06 Pl. Resp. to Def. Supp. Authority at 1, emphasis in original.) The Juniper mailer informs Plaintiff that she is "pre-qualified" for a Platinum MasterCard. (Compl. ¶ Ex. A.) While the mailer informs Plaintiff she can "accept her card today," it also asks "why wait to apply?" and attaches a "30-second pre-qualified reply form" requesting the consumer's social security number, gross annual household income, and information concerning her checking account. (*Id.*) A "firm offer of credit" may be conditioned, in relevant part, on pre-selected criteria relating to the consumer's creditworthiness or verification that the consumer still meets the criteria used to initially select the consumer for the offer. 15 U.S.C. § 1681a(l)(1)-(2). Thus, the fact that Juniper Bank requested additional information from Plaintiff in the form of a reply form is not dispositive to Defendant's position that the mailer guaranteed credit approval.

Certain features of the Juniper mailer imply the offer does in fact guarantee credit approval to its recipients. First, the "30-Second Pre-Qualified Reply Form" states "YES! Please send me my Platinum MasterCard," which suggests that upon the return of the form, the consumer will be sent his or her credit card. Further, the terms and conditions of the credit offer specify that "the account may not be available to [consumers] that already have a credit card with Juniper Bank," which could be read to imply that an account is available to all consumers who do not already have a credit card with Juniper Bank. (*Id.*) Even drawing this inference, however, the fact that an account is available to a certain group of consumers does not guarantee that they will receive the account.

In any case, the court must draw all inferences in Plaintiff's favor on a motion to dismiss. While the offer implies that the recipient could accept the offer immediately, the face of the offer also instructs the recipient to "apply" for the credit card. (*Id.*) Construed in Plaintiff's favor, this direction implies that the recipient is not guaranteed approval. The term "pre-qualified" adds further confusion. While the Seventh Circuit found "preapproval" language sufficient to guarantee credit

11

approval in *Perry*, it remains unclear to the court whether someone who is "pre-qualified" for a credit card is *guaranteed* credit approval.[6]  *See* 459 F.3d at 825.

### 2. Disclosure of Interest Rate and Material Terms

The second factor set forth in *Cole* and applied in *Perry* is whether the offer identifies the precise interest rate and other material terms. *Perry*, 459 F.3d at 824-25. Plaintiff alleges that the Juniper mailer omits key material terms such as the precise interest rate that will apply to the credit card and a guaranteed minimum amount of credit. (Pl. Opp'n at 5-7.) Defendant argues that a creditor cannot determine the amount of credit to offer or the precise interest rate until it has received additional information from the consumer, and the absence of a precise interest rate from the mailer does not preclude its status as a "firm offer of credit." (Def. Mem. at 10.)[7] The court agrees that a credit provider need not specify every material term in order to establish a "firm offer of credit," but both *Perry* and *Cole* refer to the rate of interest as a material term of a credit offer. *Perry*, 459 F.3d at 825 (finding the second *Cole* factor to be satisfied because "the interest rate is stated in the terms and conditions brochure"); *Cole*, 389 F.3d at 728 ("[N]either a credit nor a debtor considers the amount of credit in a vacuum; both must know the other terms attached to that credit. . . . [t]he terms of an offer, such as the rate of interest charged . . . may be so onerous as to deprive

---

[6] In *Murray v. IndyMac Bank, F.S.B.*, decided after *Perry*, the court similarly did not assume that the relevant language in that case—that the consumer was "pre-approved" for a new home loan—guaranteed that the bank would honor the offer. 461 F. Supp. 2d 645, 651 (N.D. Ill. 2006). In *IndyMac Bank*, the court noted that the "mere fact that the Letter contained the word 'pre-approved' [did] not mean it satisfied the FCRA" because, when examining the offer as a whole, the "pre-approved" consumer did not appear to be at any advantage over "any other consumer that stumbled onto IndyMac's name in the phone book or saw an advertisement in the newspaper." *Id.*

[7] Defendant also argues that it has disclosed all of the necessary terms based on the fact that the offer, in Defendant's view, meets the requirements of the Truth in Lending Act ("TILA"), which imposes requirements for the disclosure of credit terms. (Def. Mem. at 8-9; Def. Reply at 3.) The Seventh Circuit did not discuss the requirements imposed by TILA in determining whether material terms of a credit offer were disclosed by the credit provider in *Perry*, and this court does not view the requirements imposed by TILA as the measure of whether Juniper Bank disclosed sufficient material terms in this case.

the offer of any appreciable value.")[8]  Viewing the Juniper mailer and the allegations in Plaintiff's favor, as this court must, the court finds the offer to be deficient in specifying the applicable material terms and conditions.

Defendant submits that the court is not restricted to the face of the offer when determining whether the Juniper Bank mailing adequately disclosed the material terms of the offer.  The court disagrees. Defendant cites *Soroka v. Homeowners Loan Corporation*, an unreported Middle District of Florida case, where the court concluded that an offer may qualify as a "firm offer of credit" even if material terms are not disclosed on the face of the offer, as long as the terms are "ascertainable with minimal effort." (8/15/06 Def. Resp. to Pl. Motion to Cite Supplemental Authority, at 4-5.) 8:05-CV-2029-T-17-MAP, 2006 U.S. Dist. LEXIS 38847, *9 (M.D. Fl. June 12, 2006).  The court is restricted to the pleadings at the motion to dismiss stage and will not speculate as to whether Plaintiff could have obtained material terms from Juniper Bank with minimal effort.  Moreover, in *GMAC Mortgage*, the Seventh Circuit was clear that "a court need only determine whether the four corners of the offer satisfy the statutory definition (as elaborated in *Cole*), and whether the terms are honored when consumers accept."  434 F.3d at 956; *see Cole*, 389 F.3d at 726-28 (analyzing whether Defendant made a "firm offer of credit" based only on terms contained on flyer sent with initial solicitation); *IndyMac Bank*, 461 F. Supp. 2d at 650 (refusing to look beyond letter offering mortgage loan to determine whether bank made a "firm offer of credit" because doing so would enable bank to subvert FCRA by claiming that it intended to provide material information to

---

[8]   In *Murray v. HBSC Auto Finance, Inc.,* No. 05-C-4040, 2006 WL 2861954 (N.D. Ill. Sept. 27, 2006), cited by Defendant, the court observed that a creditor is not required to include all material credit terms in a credit solicitation mailer, and that the FCRA does not require disclosure of a minimum amount of credit in an initial credit solicitation mailer. (10/12/06 Motion of Juniper Bank to Provide Supplemental Authority, at 3-4.)  In *HBSC*, the court concluded that a mailer informing the plaintiff that she had been pre-selected for an offer to refinance her automobile loan was a "firm offer of credit."  2006 WL 2861954 at *5.  The court agrees with statements in *HBSC* that confirm that the FCRA and *Perry* do not require a creditor to include all of the specific terms of an offer, and the court does not impose such a requirement here.  *Id.* at *4.

consumers "in later communications"). Here, likewise, the court will only look to the four corners of the Juniper mailer in determining whether it constitutes a "firm offer of credit."

A recipient of the Juniper mailer cannot identify with any accuracy the rate of interest or even a narrow range of interest rates attached to the credit card offer. The terms and conditions specify that the variable APR may be set at 11.99%, 15.99%, or 18.99%, depending on a review of the applicant's reply form and credit history. (Compl. ¶ Ex. A.) The offer provides no further guidance for a recipient to determine which of these three varying interest rates he or she might receive. Defendant argues that Juniper Bank's offer is firm, despite the failure to specify the interest rate, because a creditor cannot determine the precise interest rate without additional information from the consumer. Significantly, the First National Bank was able to set a firm 18.9% interest rate in the credit offer that survived an FCRA challenge in *Perry*. In any event, this case challenges Defendant's practice of accessing otherwise-confidential credit data before extending an offer. In light of that practice, Juniper has the burden of offering a sufficient explanation as to why it is unable to make a proposal of a particular interest rate to its offerees. A credit card offer, unlike a mortgage, is not tailored to the individual consumer so as to require a great amount of individualized information. *See Cavin v. Home Loan Center, Inc.*, __ F. Supp. 2d __, 2007 WL 92509, *7 (N.D. Ill. Jan. 10, 2007) ("[U]nlike a credit card, a mortgage is tailored to the individual consumer depending on such factors as how much he or she wishes to borrow, his or her current income, and the value of the property offered as collateral; all of this information would have to be provided by the individual borrower.") The court does not conclude here that the credit provider must specify the precise interest rate, however, when viewed in the context of the entire offer discussed below, the three varying interest rates specified by Juniper Bank are not sufficiently

specific for the consumer to determine whether the offer has any value to him or her. *See Cole*, 389 F.3d at 728.[9]

It is true, as Defendant points out, that the offer specifies a number of terms—the annual fee, minimum finance charge, rates for cash advances, the grace period applicable to purchases, the method of computing the balance for purchases, and the applicable transaction charges. (Compl. ¶ Ex. A.) But a number of other terms are undetermined: the APR for Balance Transfers and Convenience Checks is variable and may be set at 11.99%, 15.99%, or 18.99%, and the default rate, which is listed as "up to 30.24% variable," remains to be determined by further information from the Plaintiff's account history and performance on accounts with other creditors. (*Id.*) The court considers it significant that the offer does not specify any minimum amount of credit. (*Id.*) While the minimum credit line in *Perry* was a modest amount ($250), the fact that it was stated enabled the consumer to calculate the value of the offer to him or her. 459 F.3d at 818. Juniper Bank's offer does not enable such a calculation. Upon receiving Juniper Bank's offer, Plaintiff had no clue if the offer was for a credit line of $5, $100, or some other amount of money.

In supplemental briefing, Defendant submitted *Forrest v. Universal Savings Bank F.A.*, a case that is not binding on this court, to support the argument that the FCRA does not require a statement of a minimum amount of credit and that a failure to state a minimum amount of credit does not indicate that an offer of credit is not firm. (12/13/06 Motion of Def. to Provide

---

[9] Citing to *Murray v. Finance America, LLC*, No. 05-C-1255, 2006 WL 862832 (N.D. Ill. Apr. 4, 2006), Defendant argues that an offer need only specify the "range of rates of interest." (Def. Reply at 12.) Judge St. Eve's criticism of the offer at issue in *Finance America* as lacking "the rate of interest or ranges of rates of interest" cannot be read as an endorsement of Juniper's offer in this case, with its broad range of possible rates, and no explanation of how the consumer might determine which end of the range she falls on. Neither *Asbury v. People's Choice Home Loan, Inc.* nor *Wanek v. C.M.A. Mortgage, Inc.*, also cited by Defendant, bolster its position here. (Def. Reply at 12, n.6.) *Asbury*, which criticized a mailer that made "no reference to interest," also observed that "the *precise* rate of interest is among the more important terms." No. 05-C-5483, 2006 U.S. Dist. Lexis 6619, **4-5 (N.D. Ill. Feb. 15, 2006) (emphasis added). Similarly, in *Wanek*, the court pointed out that the Defendant "did not specify a *precise* interest rate." (Ex. H to Pl. Opp'n, No. 05-C-4775, 12/12/2005 Minute Order, emphasis added.)

15

Supplemental Authority, at 1-2.) Unlike this case, however, the credit offer at issue in *Forrest* contained enough information for the court to infer the line of credit that Universal Savings Bank was offering. No. 06-C-445, 2006 WL 3486913, *3 (E.D. Wis. Dec. 1, 2006). The offer in *Forrest* stated that the consumer was eligible if he or she transferred $5,000 of qualifying balances to the Visa card being offered and maintained a balance of $3,500 for at least eighteen months. *Id.* at *1. The court concluded, "based on the language in the cover letter and in the mailing itself," that a consumer could "reasonably infer that $5,000 was the minimum amount Universal was offering." *Id.* at *3. Although *Forrest* did note that the FCRA does not require a disclosure of the minimum credit line, the Seventh Circuit has been clear that assessing the minimum credit available is one factor that should guide the court in determining if an offer of credit is firm. *See Perry*, 459 F.3d at 824-25.

Juniper Bank also reserves the right "to change, at any time, the benefits and features associated with the card or account." (Compl. ¶ Ex. A.) Defendant argues that this reservation of rights does not impact whether the offer of credit is a firm offer because, under Delaware statutory law, which would have governed Plaintiff's cardholder agreement, a bank is allowed to change a credit card agreement in any respect regardless of whether the amendment was originally contemplated or addressed. (Def. Reply at 4-5, citing 5 DEL. C. § 952(a).) The court is not concerned with whether Delaware law authorizes changes to cardholder agreements. The only relevant consideration here is whether Juniper Bank has expressed that it may change the terms of the *offer*; if Juniper Bank has reserved the right to change the terms of the offer, all of the material terms, including the interest rate, are uncertain. *See Kudlicki v. Farragut Fin. Corp.*, No. 05-C-2459, 2006 WL 927281, *2 (N.D. Ill. Jan. 20, 2006) ("The Court concludes that the statement in the mailer that rates and terms are subject to change at any time precludes defendant's offer from being a 'firm offer of credit.'") Drawing all reasonable inferences in Plaintiff's favor, the court finds that because the provision authorizes changes "at any time," Juniper Bank could make

16

changes to the terms of the Platinum MasterCard, the credit card offered to Plaintiff, either before or after Plaintiff accepted the offer. Juniper's reservation of the right to change the terms of the offer, combined with a wide range of possible interest rates, and no indication of the minimum credit available, all lead the court to conclude that the mailer, when viewed as a whole, does not disclose enough of the material terms for the recipients to determine whether the offer has value to them. *See Cole*, 389 F.3d at 728.

The court's conclusion is not varied by *Cavin*, a case decided after *Perry* and cited by Defendant to support that the Juniper mailer contained sufficient terms to constitute a firm offer. (1/29/07 Motion of Def. to Provide Supplemental Authority, at 1-4.) *Cavin* confirms that *Perry* and *Cole* do not require the disclosure of every single loan term, a principle with which this court agrees. Further, the *Cavin* court found that the mortgage offer at issue guaranteed recipients approval and concluded that disclosure of an exact interest rate would have been difficult precisely because the offer was for a mortgage, which had to be tailored to the individual, "unlike a credit card." *See* 2007 WL 92509 at *7.

### 3. Minimum Amount Of Credit

Finally, the court turns to whether the amount of credit offered is minimal. *See Perry*, 459 F.3d at 824-25. Defendant contends that the credit card offered by Juniper Bank has value as it could be used for virtually any type of purchase. (Def. Mem. at 13.) Defendant is correct that credit cards have value by virtue of the fact that they can be used to purchase a wide variety of products. *See Perry*, 459 F.3d at 825. That credit cards allow the holder to build up a credit rating also adds to their value. *Id.* Furthermore, as evidenced by *Perry*, a card can offer a relatively small sum of credit and still be found to have value. *Id.*

Defendant also urges that the court cannot infer, from the absence of the minimum credit line, that the Juniper offer had no appreciable value. (10/12/06 Motion of Juniper Bank to Provide Supplemental Authority, at 2.) As *Perry* observes, an offer may be a firm offer of credit even if it

17

is "not an attractive deal to the great majority of consumers," and a bank can be expected to offer credit to consumers that will allow the bank to earn a return. 459 F.3d at 825, n.2. According to Defendant here, "[i]t is evident that Juniper could not earn a return by issuing credit cards with only nominal credit lines and no annual fees." (10/12/06 Motion of Juniper Bank to Provide Supplemental Authority, at 2.) The Juniper mailer sets forth no minimum credit amount, however, and at this stage, the court is unwilling to infer that Juniper Bank must not be offering a minimal credit amount because otherwise it would not be able to earn a return.

Even if the court were willing to infer that Juniper Bank must be offering something other than a minimal amount of credit, the court would nevertheless conclude that "taking [the *Cole/Perry*] factors together" there is a possible set of facts that would support that Juniper Bank did not make a firm offer of credit in the Juniper mailer. *See Massey*, 464 F.3d at 645. As it is not clear at this juncture that recipients of the Juniper mailer were guaranteed to receive credit approval or that the offer sufficiently specifies the interest rate and other material terms, the court cannot conclude that Defendant was offering anything of value to Plaintiff. Accordingly, Plaintiff has stated a claim for a violation of the FCRA and Defendant is not entitled to dismissal on that basis.

### D. Willful Violation Of The FCRA

Plaintiff claims that she is entitled to damages under 15 U.S.C. § 1681n, which authorizes civil liability for willful noncompliance with any requirement of the FCRA. Defendant argues that Plaintiff's claim "fails to sufficiently allege a 'willful' violation as that term is defined by the FCRA." (Def. Mem. at 14.) If, however, Plaintiff's complaint puts Defendant on notice of Plaintiff's claim that Defendant willfully failed to comply with the FCRA, nothing more is required. FED. R. CIV. P. 8(a); *Cler,* 423 F.3d at 725.

Defendant is correct that a willful violation of the FCRA requires that Defendant "knowingly and intentionally violated the act" and was "conscious that [its] act impinged on the rights of others." *See Wantz v. Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004) (internal quotations and citation omitted). Plaintiff alleges that "Defendant willfully violated the FCRA" and specifically references and quotes 15 U.S.C. § 1681n in her complaint. (Compl. ¶¶ 29-30.) Defendant is on fair notice of Plaintiff's claim that Defendant willfully failed to comply with the FCRA.

## **CONCLUSION**

For the reasons explained above, Defendant's motion to dismiss (14) is denied. Defendant is instructed to answer Plaintiff's complaint on or before February 28, 2007.

ENTER:

Dated: February 8, 2007

_____
REBECCA R. PALLMEYER
United States District Judge